UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

SHAWN PAUL GROSSMAN,

                Plaintiff,

v.

M. NEUBECKER et al.,

                Defendants.

_____/

Case No. 2:24-cv-103

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint as frivolous and for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Lieutenant M. Neubecker, Hearings Officer Thomas O. Mohrman, Corrections Officer Unknown St. Onge, Assistant Resident Unit Manager/Prison Counselor Unknown Collison, Warden Sarah Schroeder, Corrections Officer Unknown Kopi, and Sergeant Unknown Naughtham in their individual

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

capacities. Plaintiff also lists Resident Unit Manager Unknown Viitala as a defendant in the case caption.

Plaintiff alleges that on March 21, 2024, he was ill and had accidently overflowed the toilet. Plaintiff states that he informed Defendant Naughtham. (Comp., ECF No. 1, PageID.19.) Plaintiff was subsequently ordered to submit to a cell shakedown and was not allowed to clean up. (*Id.*) Right before he was strip searched, Plaintiff gave Defendant Kopi a note requesting protective custody. Defendant Kopi read the note and gave it back to Plaintiff. Plaintiff was then forced to strip and to step in his own urine and feces with bare feet. (*Id.*)

Defendant Kopi told Defendant Naughtham about the note and Plaintiff was removed from Cell 38 so that his cell could be searched. (*Id.*, PageID.5, 13.) Plaintiff states that his property was thrown out of cell 38 and his legal work was torn into pieces. (*Id.*) Defendant Kopi then told Plaintiff that he was going to Cell 20 and Plaintiff protested that he would go to protective custody as requested or return to Cell 38. (*Id.*, PageID.5, 19.) Defendant Kopi left and got Defendant Naughtham, who told Plaintiff that he was going to Cell 20. (*Id.*, PageID.5, 20.) Plaintiff asked why and Defendant Naughtham told Plaintiff that he did not have to give a reason and could move prisoners at any time. (*Id.*) Plaintiff again requested protective custody and Defendant Naughtham refused. Plaintiff voluntarily went to Cell 20 at approximately 7:00 p.m. without his property or any writing materials. (*Id.*) Plaintiff states that he received a falsified ticket for disobeying a direct order and was later found guilty. (*Id.*, PageID.8.)

At 7:00 p.m., Plaintiff placed a note on a personal property receipt through the cell bars in view of the camera and then sent the request to the hearing investigator. Plaintiff states that as a result of being denied protective custody, he was assaulted with urine and feces four times. Initially on March 23, 2024, between and 11:00 a.m. and noon by a "G.D." gang member who was passing

out food trays, and again that night by a white porter. (*Id.*, PageID.6, 21.) On March 27, 2024, Plaintiff was again assaulted by the same white porter between 8:00 a.m. and 9:00 a.m. Finally, on March 29, 2024, Plaintiff was assaulted with bodily fluids while he was asleep and did not see his attacker. (*Id.*) Plaintiff states that he could not give the names of his attackers because he did not know them. (*Id.*)

Plaintiff was threatened on multiple occasions by other prisoners, who told him to either pay money or not to come out of his cell. Plaintiff states that he is not a gang member and that he was being pressured for protection money. Plaintiff asserts that he did not go to yard for this reason and that staff was aware of that fact. Plaintiff alleges that he also received a note from a "Chrome-G" to pay money, which Plaintiff forwarded to Defendant Collison. (*Id.*, PageID.7, 22.) Plaintiff states that he told staff about being assaulted with urine and feces, but they merely told him that he was making things worse by reporting the incidents. (*Id.*, PageID.7, 13.) Plaintiff kept filing kites and after nine days, he was finally taken to segregation for protective custody. (*Id.*, PageID.7.)

Plaintiff states that he received a hearing on his disobeying a direct order misconduct ticket on March 30, 2024, in front of Defendant Mohrman. Plaintiff states that Defendant Mohrman would not let him present a defense and found him guilty without any evidence. (*Id.*, PageID.9.)

On that same day, Plaintiff received a misconduct ticket for a damaged mattress from Defendant St. Onge even though the mattress was already damaged when Plaintiff was moved into cell 38. (*Id.*, PageID.10, 12.) Plaintiff claims that he notified Defendant Collison of this damage at the time he moved into the cell. (*Id.*) Plaintiff believes that Defendant St. Onge may have further torn the mattress before writing the misconduct on Plaintiff. (*Id.*, PageID.22.)

Plaintiff's hearing on the damaged mattress misconduct was conducted by Defendant Neubecker, who he had given Plaintiff an unfair hearing in November of 2023 after he received a

false misconduct ticket for mishandling a library book. (*Id.*, PageID.11-12, 23.) Plaintiff explained that the mattress was damaged when he moved into the cell and Defendant Neubecker said that Plaintiff was "out of luck because [he] shouldn't [have] written grievances on her." (*Id.*, PageID.11, 23.) Plaintiff claims that he was not allowed to speak during the hearing or to present any evidence. (*Id.*)

Plaintiff alleges that on May 10, 2024, he was again assaulted with feces and urine after Defendant Naughtham made a comment about Plaintiff being in protective custody in front of other prisoners. (*Id.*, PageID.14.) Plaintiff complains that he does not belong in level-5 because he has not committed any assaults and is not a troublemaker. (*Id.*, PageID.24.)

Plaintiff states that Defendants failed to protect him from being assaulted in violation of his rights under the Eighth Amendment. Plaintiff also asserts that Defendants retaliated against him for his use of the grievance system in violation of the First Amendment and that his misconduct convictions violated his Fourteenth Amendment due process rights. Plaintiff seeks damages and declaratory and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Schroeder and Viitala

Plaintiff makes no allegations against Defendants Schroeder and Viitala in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir.

2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendants Schroeder and Viitala in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Therefore, Defendants Schroeder and Viitala are properly dismissed.

**B.    Due Process**

Plaintiff states that he was improperly convicted of misconducts for destruction of property and disobeying a direct order, both of which are Class-II misconducts. *See* MDOC Policy Directive 03.03.105, Attachment B, ¶¶ 420, 427. To the extent that Plaintiff is seeking to assert a due process claim related to the Class-II misconduct tickets, such claims lacks merit. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995).

First, no matter what happened with respect to any misconduct ticket, the duration of Plaintiff's sentence would not change. Plaintiff is serving a sentence of 10 to 15 years for the crime of unlawful imprisonment. *See* MDOC Offender Tracking Information System, https://mdocweb .state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=621120 (last visited Oct. 15, 2024). Although there are incentives for serving time without misconducts, those incentives do not impact the duration of the sentence under *Sandin*.

In general, the MDOC no longer rewards prisoners for serving time "misconduct free." Instead, prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or after December 15, 2000, for all other crimes, are given "disciplinary time" when they are found guilty of a major misconduct. *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011; Mich. Comp. Laws § 800.34. Plaintiff is incarcerated for a crime he committed on June 24, 2014. Therefore, he is subject to disciplinary time with regard to his indeterminate sentence. Mich. Comp. Laws § 800.34.

Disciplinary time accrues when a prisoner is found guilty of a major misconduct. A prisoner's accumulated disciplinary time is submitted to the parole board for consideration at parole reviews or interviews. The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

Second, the sanctions for a disciplinary finding of guilt would not rise to the level of atypical and significant hardships. Under MDOC Policy Directive 03.3.105, Attachment D, the maximum sanctions for a Class-I misconduct conviction are as follows: 10 days of punitive

segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. The sanctions for Class-II and Class-III misconducts are similar, but with shorter maximum durations.

The most significant sanction and, therefore, hardship, is placement in segregation. The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). Lesser sanctions of toplock or loss of privileges would certainly be no worse than segregation. Put simply, any penalty Plaintiff might have faced because of his misconduct convictions would not rise to the level of an atypical and significant hardship.

Accordingly, because Plaintiff has failed to identify a liberty interest impacted by any misconduct proceedings, the Court finds that, Plaintiff fails to state a plausible Fourteenth Amendment procedural due process claim.

C.      **Eighth Amendment**

Plaintiff claims that Defendants Collision, Kopi, and Naughtham violated his rights under the Eighth Amendment when they denied his request for protective custody, which resulted in him being assaulted with urine and feces by other prisoners.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-

protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

In this case, Plaintiff makes a conclusory assertion that Defendants' denial of his request for protective custody constituted deliberate indifference. However, Plaintiff fails to allege any facts showing that any of the named Defendants were aware of an immediate risk of assault to Plaintiff should he be denied protective custody and knowingly disregarded that risk. *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. Plaintiff's assertion that he told "staff" about the assaults and was told that he was making the situation worse by reporting the incidents is conclusory and fails to identify any specific Defendants. (ECF No. 1, PageID.7.) "Summary reference to a single, [multi]-headed 'Defendants' does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019). Therefore, Plaintiff's failure to protect claims against Defendants Collision, Kopi, and Naughtham are properly dismissed.

Plaintiff also appears to be claiming that Defendant Kopi violated his Eighth Amendment rights when he ordered Plaintiff to remove his clothing for a strip search while his floor was covered in waste as a result of his toilet overflowing. The Court notes that allegations about

12

temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal quotation omitted)). Plaintiff in this case states that on the same day he overflowed his toilet, Defendant Kopi ordered him to remove his clothing and shoes for a strip search, causing Plaintiff to have to stand on the contaminated floor in his bare feet. Plaintiff states that he was subsequently removed from that cell and moved to a different cell. Plaintiff does not allege that he suffered any physical harm as a result of this incident. The Court concludes that such a brief and isolated incident does not rise to the level of an Eighth Amendment violation.

### D.    Retaliation

Plaintiff claims that Defendants retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Initially, Plaintiff asserts that Defendant Neubecker found him guilty of a minor misconduct for damaging a mattress in retaliation for writing a grievance on her. Plaintiff claims that Defendant Neubecker had previously given Plaintiff an unfair hearing in November of 2023 after he received a false misconduct ticket for mishandling a library book. (ECF No. 1, PageID.11-12, 23.) Plaintiff states that during his hearing on the damaged mattress misconduct, he explained that the mattress had already been damaged when he moved into the cell, but Defendant Neubecker responded by saying that Plaintiff was "out of luck because [he] shouldn't [have] written grievances on her." (*Id.*, PageID.11, 23.) Plaintiff claims that he was not allowed to speak during the hearing or to present any evidence. (*Id.*)

Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (citations omitted). As part of the court's inherent power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953–54 (8th Cir. 2001); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000); *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991).

In addition, courts have held that a complaint that merely repeats pending or previously litigated claims may be dismissed on PLRA screening as frivolous or malicious. *See, e.g.*, *McWilliams v. State of Colo.*, 121 F.3d 573, 574 (10th Cir. 1997) (holding that repetitious litigation

of virtually identical causes of action may be dismissed as frivolous or malicious); *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995) (noting that an action may be dismissed as frivolous when the complaint "merely repeats pending or previously litigated claims" (citations omitted)); *Pittman v. Moore*, 980 F.2d 994, 994–95 (5th Cir. 1993) (finding that it is "malicious" to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (holding that it was appropriate to dismiss a civil rights suit by a prison inmate where the suit was duplicative of facts and allegations made in a previously dismissed suit, and merely named a different defendant whose actions formed a partial basis for the previous suit); *Hahn v. Tarnow*, No. 06-cv-12814, 2006 WL 2160934, at *3–7 (E.D. Mich. July 31, 2006).

A complaint is duplicative and subject to dismissal if the claims, parties, and available relief do not significantly differ from another filed action. *See Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). Although complaints may not "significantly differ," they need not be identical. Courts focus on the substance of the complaint. *See, e.g.*, *Bailey*, 846 F.2d at 1021 (holding that a complaint was duplicative although different defendants were named because it "repeat[ed] the same factual allegations" asserted in the earlier case).

Plaintiff's retaliation claim against Defendant Neubecker was the subject of another action, *Grossman v. Neubecker*, No. 2:24-cv-102 (W.D. Mich.). In that case, Plaintiff raised retaliation claims against Defendant Neubecker that were motivated by complaints Plaintiff made and at least one grievance he filed against Neubecker relating to the November, 2023, misconduct hearing. Compl., *id*. (ECF No. 1, PageID.4–5, 8, 10, 12, 18–19, 21–26, 28). Essentially, Plaintiff alleged that by filing grievances and voicing concerns about the November misconduct, Defendants retaliated against him. The adverse actions of which Plaintiff complains were committed by several

Defendants and spanned months. Plaintiff specifically complains about being found guilty in misconduct hearings when he was not at fault.

Where Plaintiff complains about retaliatory conduct based on the same precipitating grievances and complaints by the same person over the same time period and specifically complains about improper findings of guilt in misconduct proceedings as a wrong he has suffered, the Court concludes that the retaliation claim raised against Defendant Neubecker in the present action is duplicative of the claim that the Court already dismissed in *Grossman v. Neubecker*, No. 2:24-cv-102 (W.D. Mich.). Therefore, Plaintiff's retaliation claim against Neubecker is frivolous and will be dismissed.

Plaintiff also vaguely asserts that other Defendants denied his requests for protective custody and treated him unfairly because of a desire to retaliate against him for his past use of the grievance procedure. However, these assertions are entirely conclusory and are unsupported by any specific factual allegations. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A

16

screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation in relation to the actions of Defendants Mohrman, St. Onge, Collision, Kopi, and Naughtham. He has not presented any facts whatsoever to support his conclusion that these Defendants retaliated against him because of grievances or complaints. Accordingly, he fails to state a retaliation claim against Defendants Mohrman, St. Onge, Collision, Kopi, and Naughtham. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, Plaintiff's remaining retaliation claims are also properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's complaint as frivolous and for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:    October 28, 2024                        /s/ *Maarten Vermaat*
                                                  Maarten Vermaat
                                                  United States Magistrate Judge